UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BRITTANY LOPEZ, *et al.*,  )
                           )
        Plaintiffs,   )  Case No.: 2:16-cv-01754-GMN-CWH
  vs.                      )
                           )  **ORDER**
U.S. HOME CORPORATION, *et al.*,  )
                           )
        Defendants.   )
                           )

Pending before the Court is Motion to Remand, (ECF No. 10), filed by Plaintiffs.[1] Defendants U.S. Home Corporation ("U.S. Home") and Greystone Nevada, LLC ("Greystone") (collectively "Defendants") filed a Response, (ECF No. 14), and Plaintiffs filed a Reply, (ECF No. 18).

Also pending before the Court is Defendant's Motion to Dismiss, (ECF No. 5). Plaintiff filed a Response, (ECF No. 11), and Defendant filed a Reply, (ECF No. 13). For the following reasons, the Motion to Remand is DENIED, and the Motion to Dismiss is GRANTED in part and DENIED in part.

I.  **BACKGROUND**

This case concerns a class action suit for claims arising out of alleged construction defects. Plaintiffs are a class of named and unnamed homeowners in the Sierra Ranch development in North Las Vegas. (Compl. ¶¶ 1−12, ECF No. 1-1). Defendants are the

---

[1] "Plaintiffs" are Brittany Lopez, Anthony Lopez, Paula Earl-McConico, Willie McConico, Martin Freeman, Veronica Freeman, Timmy Le, Nguyen Trinh, Gerda Pierrot, Shawn Ybarra, Shelby McEvoy, Kenneth Pfeifer, Pablo Echevarria, Patrease Ashley, Nicholas Spendrich, Maryann Undis, Shuren Zhang, Ping Yue, Robyn Cooper, Linda Yarbrough, Soon Lewis, Nicole Jenkins, Matthew Bachman, Timothy Thompson, Steve Feldman, Jennifer Durham, Jennier Houghland, Seth Mackert, Kristal Mackert, Lillie A. Banks, Nathan Reeder, Kylee Reeder, Derek Bao, Nicole Shinavar, Jerome A. Reyes, Paul E. Melendez, Scott Wortley, and Holly Wortley.

"developer, Nevada licensed general contractor, builder marketer and/or seller" of the 357 homes located in Sierra Ranch. (*Id.* ¶¶ 6–7).

On July 30, 2014, twelve Plaintiffs submitted to Defendants their first notice of common defects pursuant to NRS Chapter 40 on behalf of themselves and all "similarly situated" residences in the Sierra Ranch housing development. (*Id.* ¶ 17). Plaintiffs subsequently forwarded two supplemental notices, adding an additional ten homes. (*Id.*). On June 9, 2016, Defendants informed Plaintiffs of their election not to repair any of the alleged construction defects and their waiver of NRS Chapter 40 mediation. (*Id.* ¶ 18).

On June 22, 2016, Plaintiffs filed their Complaint in state court, alleging the following causes of action: (1) breach of implied warranties; (2) strict liability; (3) negligence and negligence per se; (4) and declaratory and other equitable relief. (*Id.* ¶¶ 20–36). Defendants removed this action, citing federal jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332. (Pet. in Removal ¶ 1, ECF No. 1). In the instant motions, Defendants' seek to dismiss certain claims alleged by Plaintiffs, and Plaintiffs seek to remand this case back to state court.

## II.  LEGAL STANDARD

### A.  Motion to Remand

Federal courts are of limited jurisdiction and possess only that jurisdiction which is authorized by either the Constitution or federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Pursuant to CAFA, a federal district court has jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant," so long as the class has more than 100 members. 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B). Generally, courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.

1992). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* As noted above, to meet the diversity requirement under CAFA, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

### B. Motion to Dismiss

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to

Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

#### A. Motion to Remand

Plaintiffs ask the Court to remand this case back to state court. Plaintiffs claim that Defendants have failed to meet their burden to demonstrate the adequate numerosity and amount in controversy requirements for federal jurisdiction under CAFA, and therefore, removal was improper. (*See* Mot. to Remand, ECF No. 10). For the following reasons, the Court finds that Defendants have met their burden of showing, by a preponderance of the evidence, that the jurisdictional requirements of CAFA are met in this case, and thus, remand is inappropriate.

##### 1. *Numerosity*

First, Plaintiffs argue that the class before the court does not contain the adequate number of plaintiffs to be removed under CAFA. (Reply 6:9−14, ECF No. 18). To establish numerosity, the proposed class need only logically meet the minimum number of plaintiffs. *Kuxhausen v. BMW Financial Servs. NA, LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013). Class actions may include named and unnamed parties. *Mississippi ex rel. Hood v. AU OptronicsCorp.*, 134 S. Ct. 736, 742 (2014).

Plaintiffs purport to represent a class of "all persons and entities presently owning an interest in one or more [of the 357] residential living units constructed upon a designated Lot in the single Sierra Ranch development." (Compl. ¶ 3, ECF No. 1-1). Even accounting for the 40

homes represented in a separate case against Defendants, the class logically exceeds 100 plaintiffs. As such, the putative class exceeds the numerosity threshold of CAFA.

### 2.  *Amount in Controversy*

Turning to CAFA's amount in controversy requirement, a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). This requires only a "short and plain statement" of the grounds for removal. 28 U.S.C. 1446; *Dart*, 135 S. Ct. at 553–54. But where "the plaintiff contests, or the court questions, the defendant's allegation" in its notice of removal, further evidence establishing that the amount in controversy meets the jurisdictional minimum is required. *Dart*, 135 S. Ct. at 554. Although no presumption against removal exists, the Court must determine, "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1198. Where a defendant relies on a chain of reasoning and assumptions to establish the amount in controversy, both must be reasonable. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

In their Motion for Remand, Plaintiffs contend that Defendants failed to meet their burden to establish by a preponderance of the evidence that it is more likely than not that the amount in controversy exceeds the CAFA jurisdictional amount. (Mot. to Remand 7: 9–8:11). In particular, Plaintiffs argue that the Complaint does not facially request a sum over $5,000,000. (*Id.*). Plaintiffs assert that "Defendants misread Plaintiffs' prayer for damage or speculate, at best, the amount of damages sought by Plaintiffs." (*Id.* 8:2–4). In support of their calculation of the amount in controversy, Defendants submit a cost of repair report ("*Medina* Report") prepared by an expert in a separate construction defect case currently pending in state

court, *Medina v. U.S. Home Corp.*, No. A-12-668394-D (Dist. Court Clark County filed Aug. 7, 2013). (Resp. 8:11−13, ECF No. 14).  As in this case, the homes included in the *Medina* Report were built and sold by U.S. Home and are interspersed throughout the Sierra Ranch housing development. (*See* Ex. 1 to Odia Decl. ("*Medina* Compl."), ECF No. 14-7).

Plaintiffs in both cases allege substantially similar defects; in the *Medina* complaint, for example, the plaintiffs allege that the forty properties at issue have "defectively built roofs, leaking windows, dirt coming through windows, drywall cracking, stucco cracking, stucco staining, water and insect intrusion through foundation slabs, and other poor workmanship." (*Medina* Compl. ¶ 9).  Likewise, Plaintiffs here allege that their homes have "improperly designed or constructed . . . slabs, . . . foundations, exterior masonry site retaining/fence walls, drainage and drainage systems[,] . . . roof and roofing systems, windows and window systems, stucco and stucco weatherproofing systems." (Compl. ¶ 13).

In light of these substantial similarities, the Court finds that the *Medina* Report suffices as a reasonable approximation of Plaintiffs' damages.[2]  Of the forty homes in the *Medina* Report, none had an estimated repair cost attributed to construction defects below $41,034.84. (*See Medina* Report, ECF No. 14-10).  Multiplying this figure by the purported 317 class members, discussed *supra*, yields a total of $13,008,044.28, well above the jurisdictional amount.  Federal jurisdiction under CAFA is therefore proper, and the Motion to Remand is denied.

---

[2] Plaintiffs argue that the *Medina* Report cannot aid in establishing the amount in controversy because it was prepared in the course of separate litigation and the Court has no way to evaluate the origin of the damages in the *Medina* Report or whether they are comparable. (Resp. 7:25−8:4).  Because of the similar underlying defects, the fact that the Medina Report was prepared for separate litigation does not undermine its validity.

**B. Motion to Dismiss**

In the instant Motion to Dismiss, Defendants seek to dismiss as time-barred certain Plaintiffs' claims arising from alleged construction defects and breach of statutory implied warranties. In addition, the Motion seeks to dismiss Plaintiffs' strict liability claim. The Court considers these three arguments in turn.

**1. *Claims Arising from Construction Defects***

Defendants argue that the six-year statute of limitations imposed by NRS § 11.202, as amended by Assembly Bill ("AB") 125, forecloses the construction defect claims of seventeen sets of named Plaintiffs[3] whose homes were built in 2006 and 2007.[4] (MTD 5:22–6:19, ECF No. 5). Pursuant to NRS § 11.202 as amended in 2015,

> 1. No action may be commenced against the owner, occupier or any person performing or furnishing the design, planning, supervision or observation of construction, or the construction of an improvement to real property more than 6 years after the substantial completion of such an improvement, for the recovery of damages for:
>
> (a) Any deficiency in the design, planning, supervision or observation of construction or the construction of such an improvement[.]

NRS § 11.202(1)(a). The Nevada legislature provided that this version of NRS § 11.202 "applies retroactively to actions in which the substantial completion of the improvement to the real property occurred before the effective date [February 24, 2015] of this act" and incorporated a one-year grace period to commence an action. 2015 Nev. Stat. Ch. 2 § 21(5), (6)

---

[3] These seventeen sets of Plaintiffs are: Paul E. and Anna G. Melendez; Nicholas P. Speldrich and Maryann Undis; Nathan and Kylee E. Reeder; Derek H. Bao and Nicole W. Shinavar; Pablo Echevarria and Patrease L. Ashley; Jennifer Durham; Seth M. and Kristal A. Mackert; Jennifer Houghland; Scott B. and Holly Wortley; Robyn Cooper; Linda Yarbrough; Shuren and Ping Yue Zhang; Timmy and Trinh Nguyen Le; Gerda Pierrot; Martin and Veronica P. Freemanl Steve Feldman; Shawn Ybarra. (MTD 8:1–16).

[4] Prior to its amendment in 2015, NRS § 11.202 imposed six, eight, and ten-year statutes of limitations. *See* NRS § 11.202 (1983).

("AB 125").  Based on AB 125, Defendants assert that these Plaintiffs' claims expired when Plaintiffs failed to "commence an action" before expiration of the grace period on February 24, 2016. (MTD 6:10–19).

Defendants' argument, however, fails to account for the tolling provision articulated in NRS § 40.695.  The operative version of NRS § 40.695 states that "statutes of limitation or repose applicable to a claim based on a constructional defect governed by NRS 40.600 to 40.695 . . . are tolled from the time notice of the claim is given, until 30 days after mediation is concluded or waived in writing."[5] NRS § 40.695 (2003).  This tolling provision "[p]revail[s] over any conflicting law otherwise applicable to the claim or cause of action." NRS § 40.635.  Accordingly, the tolling provision in NRS § 40.695 takes precedence over the statute of limitations articulated in NRS § 11.202.  Indeed, NRS Chapter 11 reinforces this conclusion: "Civil actions can only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, *except where a different limitation is prescribed by statute*." NRS § 11.010 (emphasis added).

Plaintiffs' construction defect claims were therefore tolled from July 30, 2014, the date of the first NRS Chapter 40 Notice, to July 9, 2016, thirty days after Defendants waived mediation. *See* NRS § 40.695 (tolling "statutes of limitation . . . applicable to a claim based on a constructional defect . . .  from the time notice of the claim is given, until 30 days after mediation is concluded or waived in writing").  Plaintiffs filed the instant Complaint in state court within the tolling period on June 22, 2016. (*See* Compl.).  Consequently, Plaintiffs timely filed their construction defect claims, and Defendants' Motion to Dismiss is DENIED as to these claims.

---

[5] Although NRS § 40.695 was amended in 2013, both parties cite this statute as it read prior to amendment. (*See* Resp. 6:26–7:5, ECF No. 11); (Reply 8:26–9:2, ECF No. 13).

### 2. *Breach of Implied Warranties Pursuant to NRS § 116.4114*

Defendants argue that Plaintiffs' breach of implied warranties claim pursuant to NRS § 116.4114 is time barred for the seventeen sets of Plaintiffs discussed *supra*. (*See* MTD 10:10–11:7). Plaintiffs concede this point. (Resp. 19:15–20:3, ECF No. 11). Accordingly, the Court GRANTS Defendants' Motion and, to the extent Plaintiffs allege a claim for breach of implied warranties pursuant to NRS § 116.4114, this claim is DISMISSED with prejudice with respect to these Plaintiffs. Plaintiffs' breach of common law implied warranties claim survives as asserted by all Plaintiffs.

### 3. *Strict Liability*

Next, Defendants argue that a strict liability claim based upon alleged defects in homes or components is not viable under Nevada law. The Complaint alleges strict liability against Defendants on the basis that the homes "have been defective . . . , including but not limited to the installation of defective products." (Compl. ¶ 32). In their Response, Plaintiffs clarify that the Complaint asserts strict liability under "the legal theory for design and manufacturing defects of a product itself (i.e. plumbing systems, windows and sliding glass doors)." (Resp. 10:27–19:2).

However, the Supreme Court of Nevada has ruled that a building itself is not a "product" for the purposes of strict liability in Nevada. *See Calloway v. City of Reno*, 993 P.2d 1259, 1272 (Nev. 2000). The Supreme Court of Nevada explained:

> [O]ne is strictly liable for damages from a dangerously defective product only if one is a seller "engaged in the business of selling such a product." *See* Restatement (Second) of Torts § 402A (1965). Although a contractor may, as part of a construction or remodeling project, install certain products, a contractor, without doing more, is not engaged in the business of "manufacturing" or selling such products and therefore does not come within the ambit of section 402A.

*Id.*

Although *Calloway* has been overruled in light of Chapter 40 to the extent it held that a negligence claim is not viable in a construction defect case, *see Olson v. Richard*, 89 P.3d 31, 33 (Nev. 2004), *Calloway*'s holding that strict liability is not available for damage to property from a defective component has not been overruled.  The Court therefore GRANTS Defendants' Motion with regard to this claim and DISMISSES Plaintiffs' strict liability claim with prejudice.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 10), is **DENIED**.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 5), is **GRANTED in part and DENIED in part**.

**DATED** this __27__ day of November, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge